NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAWRENCE DALE HALBERT, | ) | No. C 03-0237 JF (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT; DENYING PLAINTIFF'S |
| vs. | ) | MOTION TO DISMISS |
| | ) | |
| | ) | |
| ALAMEDA COUNTY DEPUTY | ) | |
| SHERIFF HERBERT, et al., | ) | (Docket No. 52 & 88) |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement while he was a civil detainee at the Alameda County Jail pending trial proceedings pursuant to California's "Sexually Violent Predators Act," ("SVPA") see Cal. Welf & Inst. Code §§ 6600 - 6609.3. On March 29, 2005, the Court ordered service of the amended complaint. Defendants filed a motion for summary judgment, Plaintiff filed an opposition, and Defendants filed a reply. The Court continued the motion to allow Plaintiff to conduct additional discovery, and thereafter granted Plaintiff's request for additional time to file a supplemental opposition to Defendants' motion. In response, Plaintiff filed a motion to voluntarily dismiss this action. Having reviewed the papers, the Court GRANTS Defendants' motion for

summary judgment, and DENIES Plaintiff's motion for voluntary dismissal.

## BACKGROUND[1]

Plaintiff claims that he suffered a variety of constitutional violations at the Alameda County Jail in Santa Rita, California ("SRJ") while he was housed there as a civil detainee between September 10 and 25, 2002, and again between January 30 and April 7, 2003.

California's SVPA is codified at California Welfare & Institutions Code §§ 6600-6609.3.  In Hydrick v. Hunter, 500 F.3d 978, 983 (9th Cir. 2007), the Ninth Circuit summarized how the SVPA operates.  The SVPA defines a sexually violent predator ("SVP"), as a person "convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others" that is, is "likely [to] engage in sexually violent criminal behavior."  Id. at 983.  At least six months before a person who has committed the predicate offenses is to complete his sentence, he is evaluated by the Department of Corrections and Department of Mental Health.  Id.  If those two departments agree that the person evaluated may be an SVP, a petition for commitment may be filed by the district attorney or counsel for the county in which the evaluated person was convicted.  Id.  If that person is found by a jury to be an SVP who poses a danger to the health and safety of others, he is civilly committed for an indefinite period to commence after his criminal sentence is fulfilled.  Id.  After being civilly committed, SVPs undergo a five-phase treatment program, and are entitled to periodic show cause hearings to determine whether commitment should be continued.  Id. at 983-984.

Plaintiff has an extensive history of sexual offenses.  In 1978, Plaintiff was convicted in Alameda County Superior Court of committing lewd or lascivious acts on a minor child, pursuant to California Penal Code § 288.  (Martinez Decl., ¶ 5-6 & Exs. C-

---

[1]This factual background is undisputed, unless otherwise noted.

1  D.)  In 1980, Plaintiff was convicted of rape, assault with a deadly weapon and
2  committing lewd or lascivious acts on a minor child, and in 1983 he was convicted of
3  committing lewd or lascivious acts or oral copulation on a minor child, pursuant to
4  California Penal Code § 261, 245, 288 and 288a.  (Id. at Exs. C-D.)  In 1989, Plaintiff
5  was convicted of rape and annoying or molesting a child under 18, pursuant to California
6  Penal Code § 261 and 647.6.  (Id.)  Plaintiff also was convicted of drug offenses and
7  driving under the influence in 1993, 1995 and 1997.  (Id.)

8        On September 10, 2002, Plaintiff was transferred from Atascadero State Hospital
9  to the SRJ for his jury trial in Alameda County Superior Court on charges of being an
10 SVP subject to continued civil commitment pursuant to the SVPA.  (Id. at Exs. B-5, B-6.)
11 After the trial was continued to February 2003, Plaintiff was transferred back to
12 Atascadero on September 25, 2002.  (Id. at Exs. B-4, 8, 9, 11.)  He was returned to SRJ
13 on January 30, 2003 for purposes of his trial, and remained there until June 2003, when
14 he was transferred back to Atascadero after the jury trial resulted in his civil commitment
15 as an SVP.  (Id. at Ex. B-12.)  Between January and June 2003, Plaintiff was transferred
16 from SRJ to court approximately 25 times during this period for purposes of his SVPA
17 trial proceedings.

18       Between September 10 and 25, 2002, Plaintiff was placed into administrative
19 segregation at SRJ.  (Id. at Exs. B-7 - B-9.)  When he returned to SRJ on January 30,
20 2003, he was again placed in administrative segregation until April 7, 2003, when he was
21 placed in protective custody.  (Id.)  His placement in administrative segregation, and later
22 in protective custody, was based on his classification as detainee at risk of harm by other
23 inmates due to his history of sexual offenses.  In 1980, Plaintiff had been sexually
24 assaulted while in custody.  (Id. at Exs. B-1, B-2.)  Records from Plaintiff's prior stays at
25 SRJ indicate that he had requested protective custody because many inmates in Alameda
26 County knew about his criminal history, that he "fears for his safety in mainline," and that
27 he is "known to DOJ violent crime network.  High risk sex offender.  Keep in protective
28 custody."  (Id. at Ex. B-1.)  While in administrative segregation, Plaintiff's classification

was reviewed frequently, including nine times between January 30 and April 7, 2003. (Id. at B-9 - B-12.) After he was moved to protective custody on April 7, 2003, his placement there was also frequently reviewed until transfer to Atascadero in June 2003. (Id.)

**DISCUSSION**

A.   Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.JF\CR.03\Halbert0237_msj.wpd          4

conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint or motion may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (verified complaint); Johnson v. Meltzer, 134 F.3d 1393, 1400 (9th Cir. 1998) (verified motion). Here, the Court will treat Plaintiff's sworn and verified amended complaint as an opposing affidavit to the extent it sets forth specific and admissible facts based on Plaintiff's personal knowledge.

B.   Analysis of Plaintiff's Claims

Plaintiff claims that a variety of the conditions of his confinement at the SRJ between September 10 and 25, 2002, and between January 30 and April 7, 2003, violated his constitutional rights as a civil detainee under the SVPA.

There is no *per se* prohibition on housing SVPs in facilities, such as county jails, where criminal detainees or convicts are also housed. The Ninth Circuit, in Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004), declined to hold that SVPs may not, consistent with the Constitution, be held in jail facilities, finding instead that the dispositive question when assessing an SVP's constitutional challenge to his conditions of confinement is whether those conditions are punitive. See Jones, 393 F.3d at 932. A restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods. Id. at 933-34 (citations omitted). The conditions and duration of confinement must "bear some reasonable relation" to legitimate, non-punitive government interests." Hydrick, 500 F.3d at 997(internal

quotation and citation omitted).  Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.  Jones, 393 F.3d at 932.

Further, individuals who have not yet been civilly committed at trial under the SVPA are entitled to protections at least as great as those afforded to civilly committed individuals and to individuals accused but not convicted of a crime.  Id. at 931-32.  For such individuals, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.  Id. at 934; cf. Hydrick, 500 F.3d at 997 (after trial and civil commitment under SVPA, presumption switches, and conditions of confinement are presumed non-punitive unless proven otherwise).  The government must be afforded an opportunity to rebut this presumption by showing legitimate, non-punitive interests justifying the conditions of detainees awaiting SVPA proceedings, and to show that the restrictions imposed on such detainees were not excessive in relation to these interests.  See Jones, 393 F.3d at 934-35.

During the time period at issue in this case, Plaintiff was housed at SRJ while awaiting adjudication on his civil commitment proceedings, and was housed in conditions similar to those of pretrial criminal detainees.  Thus, Defendants are required to rebut the Jones presumption that the conditions of confinement at the SRJ were punitive. Defendants have submitted declarations, Plaintiff's jail records and the SRJ policy manual as evidence in support of their motion for summary judgment.  Plaintiff has not submitted evidence in opposition, although the Court considers his sworn and verified amended complaint as an opposing affidavit to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (allowing verified complaint to be considered opposing affidavit under Rule 56 to the extent it sets forth specific facts admissible into evidence).  For the reasons discussed below, the undisputed evidence

1  submitted by Defendants overcomes the Jones presumption and demonstrates the absence
2  of a genuine issue of material fact suggesting that the conditions Plaintiff faced were
3  punitive or were not reasonably related to legitimate government interests.

4        1.      First Amendment Rights

5        Plaintiff's first claim is that Defendants violated his First Amendment rights[1] to
6  freedom of association and socialization, to assemble peaceably, to petition the
7  government for redress, and to gain access to the courts during his confinement at the jail.
8  (Amended Complaint at 24.)  Plaintiff claims that Defendants violated these rights by
9  restricting his access to newspapers and television, segregating him from other inmates
10 via administrative segregation, limiting his law library time, restricting his confidential
11 mail and confidential telephone calls, and not allowing him to file administrative
12 grievances regarding a variety of his complaints.

13       The restrictions on Plaintiff's freedom of association, via his placement in
14 administrative segregation and protective custody, were reasonably related to legitimate
15 government interest in maintaining jail security.  See generally Overton v. Bazzetta, 539
16 U.S. 126, 131 (2003) (freedom of association is among the rights least compatible with
17 incarceration).  There is ample evidence that Plaintiff presented a security problem in the
18 general population.  He had been sexually assaulted in custody previously, in 1980, and
19 had requested protection from jail officials, his history of offenses against minors was
20 known among the general population inmates in the Alameda County jail system, and he
21 was on a list of targets of a criminal network in the jails.  Under these circumstances, jail
22 officials could reasonably decide that segregating Plaintiff was necessary in order to
23 prevent an attack on Plaintiff.

24       The limitations on Plaintiff's access to newspapers and television also were not
25 punitive.  Plaintiff claims that the restrictions on access to newspapers and televisions

---

[1] Plaintiff also asserts that Defendants violated his rights under the Fourteenth Amendment insofar as the Fourteenth Amendment makes the First Amendment applicable to state actors.  See Gitlow v. New York, 268 U.S. 652, 666 (1925).

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.JF\CR.03\Halbert0237_msj.wpd     7

violated his First Amendment rights by preventing him from being a properly-informed voter. This Court is not aware of any authority, nor does Petitioner cite any, that the First Amendment guarantees an individual the right to be a fully-informed veter. There is no allegation that Defendants interfered with his voting in any election in which he was eligible to vote, nor is there any allegation that he was precluded from obtaining any information he needed by other means, such as by writing to candidates or their campaigns. In any event, newspapers and televisions were allowed in the housing pods, to which Plaintiff had access. As Plaintiff alleges in his complaint, all detainees and inmates at SRJ were not allowed to bring newspapers into their cells because in the past this had led to clogged toilets and flooded cells. This is a legitimate, non-punitive reason related to the orderly running of the jail.

Plaintiff claims that Defendants violated his First Amendment right to access the courts by limiting his access to the law library, restricting his administrative grievances, and limiting his confidential and personal phone calls. In order to show a First Amendment violation based on the denial of access to the courts, a plaintiff must show an actual injury, meaning some actual prejudice to the filing or pursuit of a non-frivolous claim in court. See Lewis v. Casey, 518 U.S. 343, 351 (1996); Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007). Plaintiff does not allege that he was unable to pursue any particular, let alone non-frivolous, claim, or how such claim was prejudiced by the alleged limitations on his law library access, confidential mail and phone calls. As such, there is no evidence that he suffered any actual injury from such limitations.

Plaintiff's allegations regarding administrative grievances also do not establish an actual injury. He alleges that Defendants told him that there was no administrative grievance procedure available for a variety of his complaints. Plaintiff does not allege that the lack of such grievances caused any impediment to pursuing any claims in court; indeed, as such grievances were not "available," they are not a prerequisite to his filing the instant, or any other, federal action. Moreover, limiting law library access is inherent in managing a limited resource for a large group of individuals who all want to use it, and

monitoring of phone calls and incoming mail are plainly related to security problems inherently related to jails, see Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987). Lastly, there is no constitutional right to an administrative appeal process. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Consequently, the evidence establishes that these restrictions were reasonably related to legitimate government interests and were not punitive in nature.

      2.     <u>Fourth and Fourteenth Amendments</u>

Plaintiff claims, and Defendants do not dispute, that pursuant to SRJ policy Plaintiff was subject to unclothed body and visual body cavity searches each time he arrived at SRJ from an outside location (such as a state hospital or superior court), or where there was reasonable suspicion that he had an opportunity to obtain contraband (such as after visits from his attorney). Plaintiff further alleges that he was escorted around the jail in handcuffs, and occasionally waist restraints. Plaintiff claims that these actions violated his Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. (Amended Complaint at 24-25.)

The Fourth Amendment right to be secure against unreasonable searches and seizures extends to SVPs. Hydrick, 500 F.3d at 993. The reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry. Id.

A strip search that includes a visual body cavity search complies with the requirements of the Fourth Amendment so long as it is reasonable. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Bell, the Supreme Court evaluated the constitutionally of a blanket policy allowing visual body cavity searches, without regard to individualized suspicion, of all inmates at the county jail, including pretrial detainees, after every contact visit with a person from outside the institution. Id. at 559-60. The Supreme Court upheld the policy because the possibility of smuggling drugs, weapons, and other contraband into the institution presented significant and legitimate security interests. Id. As an SVP, Plaintiff had the right to conditions of confinement that are not punitive and a substantive

1 liberty interest in freedom from unnecessary bodily restraint. <u>Jones</u>, 393 F.3d at 933;
2 <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22 (1982). Thus, the Court must determine
3 whether the searches and restraints of Plaintiff were reasonably related to legitimate
4 government interests, or were punitive. <u>See</u> <u>Bell</u>, 441 U.S. at 536-37; <u>Hydrick</u>, 500 F.3d
5 at 993.

6       The Court finds that Plaintiff has failed to create a genuine issue of material fact as
7 to whether he suffered a violation of a constitutional right when he was searched. As
8 described above, strip and body cavity searches are reasonably related to the legitimate
9 government interest in keeping contraband out of a jail. The searches in this case were
10 only conducted when Plaintiff had a reasonable opportunity to obtain and introduce
11 contraband to the jail, such as when he arrived from an outside location or returned from
12 seeing visitors. There was no touching of Plaintiff during the searches, and the searches
13 were not conducted in public or in the presence of members of the opposite sex. Plaintiff
14 alleges that a member of the opposite sex could have observed the searches through a
15 video monitoring camera, but this allegation is speculative as he has produced no
16 evidence that a member of the opposite sex ever actually observed him being searched.
17 There is, furthermore, no evidence that jail officials could ensure that dangerous
18 contraband stay out of the jail by alternate means than a blanket policy requiring such
19 searches both when individuals return to the jail from outside and after visits from people
20 outside the jail. Based on the evidence before the Court, the strip and body cavity
21 searches alleged by Plaintiff were reasonably related to legitimate security concerns and
22 did not violate Plaintiff's constitutional rights. <u>Accord</u> <u>Johannes v. Alameda County</u>
23 <u>Sheriff's Dept.</u>, No. C 04–0458 MHP, 2006 WL 2504400 (N.D.Cal. Aug. 29, 2006)
24 (finding strip and body cavity searches of SVP at SRJ following return from Atascadero
25 or court constitutional).

26       Similarly, escorting and restraining Plaintiff when he was transported around the
27 jail was reasonably related to keeping Plaintiff safe. As described above, there was a
28 great deal of evidence regarding the risk of harm Plaintiff faced at the hands of others in

the jail based on Plaintiff's SVP status and his history of abusing minors.  Handcuffing Plaintiff, and on one occasion using waist chains, would reasonably help prevent Plaintiff from separating himself from his guard - escorts and thereby endangering himself at the hands of other inmates.

In sum, the undisputed evidence, even viewed in a light most favorable to Plaintiff, establishes that the searches and restraints of Plaintiff at SRJ did not violate his Fourth and Fourteenth Amendment rights.

### 3. Substantive and Procedural Due Process

Plaintiff claims that Defendants violated his "procedural right to due process" and his "substantive right to due process" by housing him with, and under the same conditions as, penal detainees at SRJ, and by failing to provide him notice and a hearing prior to doing so. (Amended Complaint at 25-26.) Defendants argue that they had legitimate, non-punitive interests justifying how they housed Plaintiff, and that the restrictions imposed on Plaintiff were not excessive in relation to those interests.

As noted above, Punitive conditions may be shown where challenged restrictions are expressly intended to punish, where they are excessive in relation to a non-punitive purpose, or where they are employed to achieve objectives that could be accomplished by alternative and less harsh methods.  Additionally, a presumptive of impermissible punitive conditions of confinement applies when an individual awaiting adjudication as an SVP is confined "in conditions identical to, similar to, or more restrictive than those in which his criminal counterparts are held," or "in conditions more restrictive than those the individual would face following SVPA commitment." Jones, 393 F.3d at 932, 933. The Jones presumption is rebutted, however, if the defendant shows that legitimate, non-punitive interests justified the conditions to which an SVP was subjected, and that the restrictions imposed upon the SVP were not excessive in relation to those interests. Id.

Here, the undisputed evidence demonstrates that SRJ policy provides that civil detainees are processed, transported, housed and fed separately from other inmates. (Martinez Decl. Ex. A.)  Further, jail policy allows for segregating civil detainees, such as

Plaintiff, in administrative segregation because their criminal records and the nature of their offenses put them at risk of harm from other inmates. (Id.) In addition, detainees in administrative segregation receive medical care, educational programs, newspapers, daily telephone calls, access to the library, law library, and legal assistance. (Id.) It is undisputed that Plaintiff was housed in his own cell in administrative segregation, separate from the inmates at SRJ, until he waived that right and was transferred to protective custody on April 7, 2003. Jail officials had ample evidence, as described above, as to the dangers Plaintiff in particular faced from the inmates at SRJ.

The Court finds the evidence presented by Defendants sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in administrative segregation were punitive, and that Plaintiff has failed to carry his burden of demonstrating a genuine issue of material fact with respect thereto. Plaintiff's sole argument is that, as a matter of law, Defendants violated his constitutional rights because he was not housed in a non-jail facility; in other words, he claims that the incarceration of SVPs with those who are facing or have been convicted of criminal charges is unconstitutional *per se*. Plaintiff does not cite, nor is this Court aware of, any United States Supreme Court or Ninth Circuit case that so holds. Rather, the case law to date leads to the opposite conclusion, that there is no *per se* prohibition on housing SVPs in facilities where criminal detainees or convicts are also housed. In Seling v. Young, 531 U.S. 250 (2001), for example, the United States Supreme Court upheld the constitutionality of a state civil commitment statute pursuant to which SVPs were held in segregated housing in prison facilities. See id. at 261. Similarly, the Ninth Circuit, in Jones, declined to hold that SVPs may not, consistent with the Constitution, be held in jail facilities. See Jones, 393 F.3d at 932.

The Court also finds the reasoning in Munoz v. Klender, 208 F. Supp. 2d 1125 (S.D. Cal. 2002), to be persuasive. After first finding no controlling authority that would prohibit an SVP's detention in a county jail pending judicial proceedings, the district court reviewed the purpose of California's SVPA and found that the Plaintiff's detention

at the county jail while he was awaiting recommitment proceedings did not violate his right to due process. Specifically, the district court concluded that "the need to safely produce dangerous detainees for judicial proceedings and associated logistical challenges support the use of local law enforcement detention facilities for that purpose and do not run afoul of any constitutional right [plaintiff] has identified." Id. at 1144.

As Defendants have produced evidence sufficient to rebut the presumption that the conditions of Plaintiff's confinement at SRJ were punitive, and Plaintiff has not carried his burden of producing evidence that creates a genuine issue of material fact with respect thereto, Defendants are entitled to summary judgment on Plaintiff's due process claims.

4. Equal Protection

Plaintiff claims that Defendants failed to provide him with the protections afforded to "other civil commitments. (Amended Complaint at 26.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (internal quotation and citation omitted).

Plaintiff has failed to allege, or present evidence, as to what "other" civil detainees were treated differently than he, or how such treatment differed from the treatment he received. To whatever extent Plaintiff means to claim that he was treated differently from individuals civilly detained pursuant to the Lanterman-Petris-Short Act (Cal. Welf. & Inst. Code §§ 5000, et seq. ("LPS Act")), which Act sets forth the rights applicable to persons who have been involuntarily detained in a mental health treatment facility for evaluation or treatment, his claim fails. The LPS Act by its terms applies only to those who are involuntarily detained in a mental health facility for evaluation or treatment, and does not apply to individuals such as Plaintiff, who are involuntarily confined because they are facing civil commitment proceedings under the SVPA. The Court also finds persuasive the decisions finding that individuals facing commitment under the SVPA are not similarly situated to those detained under the LPS Act. See Munoz, 208 F. Supp. 2d

at 1136 & n.8 (distinguishing SVPA from LPS Act and other California involuntary confinement statutes; finding persons committed under SVPA and LPS Act are not similarly situated); see also Sisneroz v. Whitman, No. CV F 01-5058 AWI DLB, 2006 WL 2583000, *5 (E.D. Cal. Sept. 6, 2006) (finding SVP's allegation of entitlement to protections of LPS Act does not state equal protection claim); Johnson v. Santa Clara County, No. C 02-3279 SI (PR), 2003 WL 22114269, *3 (Sept. 5, 2003) (same).

It is undisputed that Plaintiff was confined at the SRJ as an SVP; accordingly, as the Court finds, as a matter of law, that SVPs are not similarly situated to individuals detained under the LPS Act, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

5.  Sixth Amendment

Plaintiff claims that Defendants violated his Sixth Amendment rights because placing him in administrative segregation and limiting his access to the law library denied him access to the courts, and failing to provide confidential telephone calls to counsel and opening his mail from his attorney violated his right to counsel. (Amended Complaint at 26-27.)

Plaintiff cites no authority, and the Court is aware of none, that the denial of access to the courts to a detainee implicates the Sixth Amendment. To whatever extent the Sixth Amendment might apply to such a claim, the claim fails for the same reason Plaintiff's claim of denial of access to the courts failed under the First Amendment -- namely the lack of evidence of any "actual injury." Plaintiff's claim that the non-confidential telephone calls and legal mail violated his right to counsel by violating his attorney-client privilege also fails because he has made no allegation and presented no evidence that such restrictions interfered with his ability to effectively communicate with his attorney or assist his own defense with respect to commitment proceedings or any other case. Such a showing is necessary in order to establish a violation of the Sixth Amendment right to counsel. See Maine v. Moulton, 474 U.S. 159, 170 (1985). Furthermore, Defendants have presented evidence that Plaintiff was transported from SRJ to court, where he had

1  the opportunity to meet with counsel, on numerous occasions.  There is no allegation or
2  evidence by Plaintiff that he was unable to meet confidentially or effectively
3  communicate with counsel on those occasions.  The evidence before the Court suggests
4  no basis for finding a violation of the Sixth Amendment, and as a result, Defendants are
5  entitled to summary judgment on this claim.

6        6.     Right to Privacy

7  Lastly, Plaintiff claims that his right to privacy under the Fourteenth Amendment
8  was violated because he was not allowed sufficient privacy while showering, meeting
9  with visitors, and using the telephone.  (Amended Complaint at 27-28.)  The expectation
10 of privacy in a county jail is necessarily diminished by the government's legitimate
11 interest in securing and effectively managing the jail.  See Bell, 441 U.S. at 557.  To test
12 the reasonableness of intrusions into privacy in the jail setting, the Court "must consider
13 the scope of the particular intrusion, the manner in which it is conducted, the justification
14 for initiating it, and the place in which it is conducted." Id at 559.  Matters such as the
15 introduction of contraband, plans for escape or insubordination, and conflict among
16 inmates or between inmates and staff could be discussed in confidential telephone calls or
17 during confidential visits.  As such, Defendants' restrictions on these matters are
18 relatively routine precautions related to the safety of the staff and inmates and the security
19 of the jail.  See, e.g., Block v. Rutherford, 468 U.S. 576, 588 (1984) (deferring to
20 discretion of jail administrators' determination that contact visits would jeopardize safety
21 of institution).  With respect to showers, Plaintiff does not allege or provide any evidence
22 describing how his privacy was restricted, let alone that such restrictions were
23 unreasonable intrusions unrelated to the enforcement of jail rules necessary to protect the
24 safety of the institution, such as those regulating and monitoring shaving materials,
25 fraternization, and/or the use of banned substances.
26 In the absence of any evidence that the alleged restrictions on Plaintiff's showers,
27 telephone calls, and visits were unrelated to the legitimate government interest in the
28 safety of SRJ, Defendants are entitled to summary judgment on Plaintiff's right to privacy

claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. In light of this conclusion, Plaintiff's motion for voluntary dismissal is DENIED as unnecessary.[2] See Fed. R. Civ P. 41(a)(2) (after service of summary judgment, Plaintiff must obtain leave of court to voluntarily dismiss).

This order terminates Docket Nos. 52 & 88.

This Clerk shall close the file.

IT IS SO ORDERED.

DATED: 9/26/08

JEREMY FOGEL
United States District Judge

---

[2] In his motion, Plaintiff states that now that he has been out of custody for over two years, this case "would only help Plaintiff to hold on to a part of his life that would be better placed behind him." While the Court applauds Plaintiff's desire to move on, dismissal without prejudice is not appropriate at this stage, as the case has been pending for over five years and Defendants have expended substantial time and resources in gathering evidence, preparing a motion for summary judgment and a reply brief, and responding to Plaintiff's various motions. Dismissal with prejudice is not necessary in light of the Court's conclusion that Defendants are entitled to summary judgment.